Inge, Garry V., J.
INTRODUCTION
This is a class action involving an alleged failure to train and supervise state correctional employees. At all times relevant to this action, the plaintiffs, John F. Campbell, Michael C. Harju, Marlon Guardado, Ronald G. Paris, Hector M. Rodriguez, Raheem Childers, Franz Harris, Jr., Nevin Dustin Hiram Irizarry Mojica, Myron Vacca, Phillip C. Shannonhouse, and Timothy M. Vargo (collectively the “Plaintiffs”), were inmates at the Worcester County House of Correction (the “Worcester Jail”). They assert various claims against the defendants, Guy Glodis, Worcester County Sheriff (the “Sheriff’), the Commonwealth of Massachusetts (the “Commonwealth”), FNH USA, LLC (“FNH”), and US Corrections Special Operations Group Corp. (“Special Operations”), in connection with treatment they allegedly received while incarcerated. More particularly, the Plaintiffs allege claims for: violation of the Eighth Amendment against the Sheriff and the Commonwealth (Count I); failure to train and supervise in violation of 42 U.S.C. § 1983 against the Sheriff (Count II); negligent failure to train and supervise in violation of G.L.c. 258 against the Commonwealth (Count III); and common-law negligent failure to train against FNH and Special Operations (Count IV). This matter is currently before the court on two motions: (1) Special Operations’ Motion to Dismiss Class Action (“Motion to Dismiss”); and (2) FNH’s Cross Motion for a Ruling that the Plaintiffs’ Claims Cannot Be Maintained as a Class Action (“Cross Motion to Prohibit Class Certification”).[4] For the reasons explained below, Special Operations’ Motion to Dismiss will be DENIED, and FNH’s Cross Motion to Prohibit Class Certification will be DENIED.
BACKGROUND[5]
For purposes of the motion to dismiss, the court accepts as true the factual allegations asserted in the Plaintiffs’ Complaint. See Berkowitz v. President & Fellows of Harvard Coll., 58 Mass.App.Ct. 262, 270 (2003).
The Plaintiffs were, at all times relevant to the current action, inmates incarcerated at the Worcester Jail. They allege that, while incarcerated, in or after February 2007, correctional staff working at the Worcester Jail subjected them to varying levels of physical and mental abuse. This abuse included: being sprayed with oeloresin capsicum (“pepper spray”); being denied decontamination from the pepper spray; being shot with a FN-303;[6] being placed in restraints for excessive periods of time; and being denied proper restroom access.
DISCUSSION I. Class Certification A. Timing
As an initial matter, the court addresses the timing of Special Operations’ Motion to Dismiss. In its Cross Motion to Prohibit Class Certification, FNH argues Special Operations’ Motion to Dismiss is premature, stating it “submits [its] motion reluctantly" because “any ruling on class certification should be deferred until after a period of discovery ... so as to provide the [c]ourt with a sufficient factual record.” However, while the court acknowledges FNH’s reluctance to address this issue prematurely and recognizes the fact that the Plaintiffs have not yet been certified as a class, it concludes that the class status issue can and should be resolved as expeditiously as possible. See Carpenter v. Suffolk Franklin Sav. Bank 370 Mass. 314, 317-18 (1976) (stating trial court may, in its discretion, rule preliminarily on the class action issues and postpone discovery until the certification issue has been decided).
Here, the court fails to see what additional information could be acquired through further discovery that would have any bearing on the class certification *466 issue. This is especially true where the Plaintiffs have filed a “CLASS ACTION COMPLAINT" and the parties have fully briefed their arguments as to whether the Plaintiffs can pursue their claims as a class. Finally, by addressing the class certification issue now, no party is prejudiced in that Massachusetts takes a flexible approach to class certification and allows modification when required. See, e.g., Aspinall v. Philip Morris Cos., 442 Mass. 381, 398 n.22 (2004), quoting School Comm. of Brockton v. Massachusetts Comm’n Against Discrimination, 423 Mass. 7, 14 n. 12 (1996) (stating courts should take a flexible approach to class certification allowing modification where necessary); Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 87 n.8 (2001) (stating judge may revisit class certification after discovery if necessary).
B. Class Certification Requirements
Next, both Special Operations and FNH contend the Plaintiffs cannot meet the requirements for class certification set forth in Mass.R.Civ.P. 23 (“Rule 23”). The court disagrees with this assessment. As the Plaintiffs point out, this case appears to be very similar to other class action claims asserted by inmates challenging jail policies and practices that concern conditions of confinement and discipline. See, e.g., Ahearn v. Vose, 64 Mass.App.Ct. 403, 411 (2005) (addressing class action claims challenging the correctional facility’s failure to provide flush toilets in cells). As discussed in more detail below, the court concludes the Plaintiffs have met the requirements for class certification.[7]
Rule 23 sets forth the requirements for certification of a class as follows:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Mass.R.Civ.P. 23(a). In addition to the above requirements, Rule 23 provides that a class action may be maintained only
if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Mass.R.Civ.P. 23(b). In other words, a party seeking certification of a class must demonstrate six requirements—numerosity, commonality, typicality, adequacy, predominance, and superiority.
The party seeking certification bears the burden of proving that all six of the above-mentioned requirements have been met. See Weld, 434 Mass. at 86-87. Certification of a class is not a matter of mathematical precision. Id. at 85. Rather, the decision to certify a class is within the broad discretion of the trial judge. Id. at 84-85; see also Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 537 (1986). A plaintiff must provide “information sufficient to enable a judge to form a reasonable judgment that the class meets” the certification requirements. Weld, 434 Mass. at 87. A plaintiff, however, “doles] not bear the burden of providing evidence sufficient to prove that the requirements have been met.” Id., citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975) (stating that neither the possibility that the plaintiffs’ claims will ultimately fail nor the possibility that a decision to certify a class may unforeseeably turn out incorrect is a proper basis to decline certification).
1. Numerosity
“Because a judgment in a valid class action binds individuals who have not had a day in court, the litigation can be justified only by a positive showing that the class is so numerous as to vitiate joinder under either Rule 19 ... or Rule 20 and that whatever the numbers, the circumstances make joinder impracticable.” James W. Smith and Hiller B. Zobel, Rules Practice §23.4, at 336 (2d ed. 2006 & Supp. 2010) (emphasis in original). “Impracticable” does not, however, mean “impossible or incapable of being performed.” Brophy v. School Comm. of Worcester, 6 Mass.App.Ct. 731, 735 (1978) (internal citations omitted). Rather, the term “has been interpreted to mean impractical, unwise or imprudent.” Id. (internal citations omitted). “Numbers alone ... do not control.” Smith, supra, §23.4, at 337. In assessing numerosity, the court also considers efficiency, limitation on judicial resources, and expenses to the plaintiff. Brophy, 6 Mass.App.Ct. at 736.
Here, the Plaintiffs identify the class as “all persons who at any time on or after February 20, 2007, have been or will become the objects of excessive force at the jail . . . [through the unjustifiable use of) . . . [pepper spray], the [FN-303], and/or physical restraints.” The Plaintiffs consist of eleven such individuals, but there may be others, as yet unnamed, that fall into this class of persons. The joinder of all such plaintiffs certainly appears “impractical, unwise, [and] . . . imprudent.” Id. at 735. Relying on principles of efficiency and economical use of limited judicial resources, the court concludes the Plaintiffs have met Rule 23’s numerosity requirement.[8]
2. Commonality
Next, Rule 23 “requires the presence of questions of law or fact common to the class, although total commonaliiy is unnecessary.” Smith, supra, §23.5, at 337 (emphasis in original). More particularly, this requirement dictates that a plaintiff demonstrate that *467 “all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief.” Spear v. H.V. Greene Co., 246 Mass. 259, 266 (1923). The interest of each member of the class does not have to be identical in all respects, but the “interest must arise out of a common relationship to a definite wrong.” Id.
In this suit, all potential class members have allegedly been subjected to excessive force while incarcerated at the Worcester Jail through the unjustifiable use of the FN-303, pepper spray, and/or physical restraints. All potential class members have an interest in the subject matter of this suit and a right to the same relief, i.e., a right to prevent the unjustifiable use of pepper spray, the FN-303, and/or physical restraints. Although the interests of all the potential class members are not identical, since the circumstances surrounding each alleged use of excessive force differ, the interests all arise from a common wrong, i.e., the Worcester Jail’s alleged policy and/or practice of using excessive force to discipline inmates. The court concludes the Plaintiffs have met Rule 23’s commonality requirement.
3.Typicality
“The requirement that the representative’s claims or defenses typify those of the class relates ... to the court’s obligation to determine whether the representative parties will fairly and adequately protect the class’s interests.” Smith, supra, §23.6, at 338. “Typicality is established when there is ‘sufficient relationship .. . between the injury to the named plaintiff and the conduct affecting the class,’ and the claims of the named plaintiff and those of the class ‘are based on the same legal theory.’ ” Weld, 434 Mass. at 87, quoting 1 Alba Conte & Herbert Newburg, Class Actions §3.13, at 3-76 (3d ed. 1992). Typicality may exist “even if the claims present varying fact patterns or a disparity in the damages, because the rules require neither a joint wrong nor a substantial identity of claims or defenses.” Smith, supra, §23.6, at 338. “A plaintiff representative nominally satisfies the typicality requirement with ‘an allegation that the defendant acted consistently toward the [representative and the] members of a putative class.’ ” Weld, 434 Mass. at 87, quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 606 (1985).
In the current action, the Plaintiffs’ alleged injuries are the same injuries that have been inflicted upon other potential class members. Further, the Plaintiffs’ claims and the claims of other class members are based on the same legal theories, i.e., violation of the prohibition against cruel and unusual punishment and the negligent failure to train and supervise individuals employed at the Worcester Jail. Even though the circumstances surrounding each individual use of excessive force may present a different fact pattern, the Plaintiffs’ claims clearly exemplify those of the class. The court concludes the Plaintiffs have met Rule 23’s typicality requirement.
4.Adequacy
“(A)dequacy of representation depends principally upon counsel’s competence and the integrity of counsel and of the class representative.” Smith, supra, §23.7, at 339. While “[a] class representative has the responsibility to protect the interest of all class members!,]” Spence v. Reeder, 382 Mass. 398, 409 (1981), citing Gonzales v. Cassidy, 474 F.2d 67, 76 (5th Cir. 1973), counsel for a class “has a continuing obligation to [represent appropriately] each class member.” Id., citing Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1176-77 (5th Cir. 1978), cert. denied, 439 U.S. 115 (1979). In addition, the judge “has a role as the guardian of the absent parties’ interests.” Id., citing United Founders Life Ins. Co. v. Consumers Nat’l Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971).
Here, there is no evidence to suggest that either the Plaintiffs or their counsel will not adequately protect the interests of the class as a whole. As explained above, the Plaintiffs claims and legal theories are the same as those that would be asserted by other potential class members. If, as the litigation progresses, this changes, the court may modify its certification decision.
5.Predominance
“The predominance test expressly directs the court to make a comparison between the common and individual questions involved,” in order to reach a determination as to whether the common questions outweigh the individual. Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 363 (2008), quoting 4 Alba Conte & Herbert Newberg, Class Actions §4.24, at 154 (4th ed. 2002). The inquiry does not require that common questions dispose of the entire litigation. Id. at 364. Further, “the presence of individual questions does not, per se, contraindicate class action treatment.” Smith, supra, §23.8, at 341. Rather, “the question is whether the individual questions so inundate the common issues that a class action is no longer desideratum—or even useful.” Id. This determination is highly discretionary. Fletcher, 394 Mass. at 601, quoting Baldassari v. Public Fin. Trust, 369 Mass. 33, 40 (1975), superseded on other grounds by statute, St. 1979, c. 406, § 1, as recognized in Leardi v. Brown, 394 Mass. 151 (1985).
Again, here, the Plaintiffs’ claims and alleged injuries are the same as those experienced by other members of the class. Further, the legal theories on which these claims rest are the same. At this stage, there are at least two common questions that predominate: (1) whether the unjustifiable use of the FN-303, pepper spray, and/or physical restraints constitutes cruel and unusual punishment; and (2) whether corree- *468 tional employees at the Worcester Jail were negligently trained and/or supervised with respect to their use of the FN-303, pepper spray, and/or physical restraints. These common questions outweigh any individual questions regarding how each individual member of the class was injured. The court concludes the Plaintiffs have met Rule 23’s predominance requirement.
6. Superiority
Once the other prerequisites for class certification have been met, the plaintiff must still demonstrate that a class action is superior to other methods for efficiently adjudicating the controversy. Fletcher, 394 Mass. at 601. This determination overlaps with some of the analyses under the previous requirements. At this point, the court considers the following:
(1) the size of the class; (2) the number and dollar, amount of the claims which the class members hold . . . ; (3) whether the relief sought is solely injunc-tive, or instead includes money damages . . . ; (4) whether the class is party-plaintiff or defendant, realizing that if the latter, plaintiff selects the representatives, . . . requiring particular judicial effort to ensure fairness; (5) the desirability of a uniform determination of common legal and factual issues . . . ; (6) the expense to the parties and to the Commonwealth of maintaining separate actions; and (7) the administrative difficulty of subsequently determining and distributing damages to absentee class members, as opposed to the problems presented by administering multitudinous individual lawsuits.
Smith, supra, §23.8, at 342 (emphasis in original).
In this case, the analysis of these factors demonstrates that a class action is the best method for efficiently adjudicating this controversy. First, as discussed above, the size of the possible class makes joinder impracticable. Next, the administrators responsible for making policy decisions at the Worcester Jail will benefit from one uniform determination as to the proper use of the FN-303, pepper spray, and/or restraints. Third, maintaining separate causes of action for every possible plaintiff would be unnecessarily costly. Finally, there appears to be no special administrative difficulty in determining and distributing damages compared with the problems associated with administering countless individual lawsuits. The court concludes the Plaintiffs have met Rule 23’s superiority requirement.
As explained above, the court finds that the Plaintiffs have met the class certification requirements established by Rule 23. For this reason, Special Operations’ Motion to Dismiss will be DENIED with respect to its arguments against class certification; and FNH’s Cross Motion to Prohibit Class Certification will also be DENIED.
II. Motion to Dismiss for Failure to State a Claim
In addition to its arguments opposing class certification, Special Operations also argues the Plaintiffs’ claim against it for negligent failure to train (Count IV) should be dismissed because Special Operations has no control over the policies and practices at the Worcester Jail. The court disagrees with Special Operations. The Plaintiffs have pled sufficient facts to support a claim against Special Operations for negligent training.
A. Standard of Review
Pursuant to the standard of review applied to motions to dismiss, “a plaintiffs obligation to provide the ‘grounds’ of his entitle[ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). At the pleading stage, the plaintiff is required to present “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement.. . that the plain statement possess enough heft to sh[ow] that the pleader is entitled to relief.” Id. at 637, quoting Bell Atl. Corp., 550 U.S. at 557 (internal quotations omitted).
B. Negligent Failure to Train
The Plaintiffs contend the Sheriff and the Worcester Jail signed a contract (the “Contract”) with Special Operations “to provide training and instruction to [the Worcester Jail’s] correctional staff in the use and maintenance of the [FN-303] weapons.” According to the Plaintiffs, Special Operations proximately caused their injuries “ [b]y [negligently] failing to warn and instruct [the correctional] staff about the risk[s] of serious injury arising from close range shooting of persons with the [FN-303].” This claim is premised upon a negligence theory and, as with all such claims, it requires the Plaintiffs to prove the four well-known elements of duty, breach, causation, and damages. Glidden v. Maglio, 430 Mass. 694, 696 (2000); Delaney v. Reynolds, 63 Mass.App.Ct. 239, 241 (2005).
1. Duty
It is fundamental that “[t]here can be no negligence where there is no duty.” Karlowski v. Kissock, 275 Mass. 180, 183 (1931), abrogated on other grounds by, Ali v. Boston, 441 Mass. 233 (2004). The existence of a duty of care is a question of law for the court. Cottam v. CVS Pharm., 436 Mass. 316, 320 (2002). In general, “the courts will find a duty where . . . reasonable persons would recognize it and agree that it exists.” Luoni v. Berube, 431 Mass. *469 729, 735 (2000) (internal citations omitted). In the current case, the Plaintiffs appear to allege Special Operations owed them a duty of care because they were the intended third-party beneficiaries of the Contract.
In order to recover as a third-party beneficiary, a plaintiff must show that the original contracting parties intended that the plaintiff receive the benefit of their performance. Anderson v. Fox Hill Vill. Homeowners Corp., 424 Mass. 365, 366-67 (1997). In fact, “(i]t must appear from the language and circumstances of the contract that the parties to the contract ‘clear[ly] and definite[ly]’ intended the beneficiaries to benefit from the promised performance.” Miller v. Mooney, 431 Mass. 57, 62 (2000), quoting Anderson, 424 Mass. 366-67. In making this determination, the court examines “the language and circumstances of [the] contract for indicia of intention.” Anderson, 424 Mass. 366-67. A party is an intended beneficiary only where “the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Rae v. Air-Speed, Inc., 386 Mass. 187, 194 (1982), citing Restatement (Second) of Contracts §302(1)(b). One who is an “incidental beneficiary” may not recover. Anderson, 424 Mass. 366-67.
Although the Complaint does not expressly allege that the Plaintiffs are intended third-party beneficiaries of the Contract, the Plaintiffs allege facts from which the court can, and does, infer that the purpose of the Contract was to safeguard the Plaintiffs.[9] The Plaintiffs allege the Sheriff and the Worcester Jail contracted with Special Operations to provide training and instruction on the use and maintenance of the FN-303 devices. It seems clear that, as the parties to whom the FN-303 devices would be used against, the Plaintiffs are, at least, possible third-party beneficiaries of the Contract. The facts as stated plausibly suggest that the Contract was made for the Plaintiffs’ benefit. At this stage, the Plaintiffs have alleged sufficient facts to support that they are third-party beneficiaries to whom Special Operations owed a duty of care.[10]
2.Breach
The question of breach is generally one of fact which must be left to the jury. Pucci v. Amherst Rest. Enters., Inc., 33 Mass.App.Ct. 779, 785 (1992). Here, the Plaintiffs allege that Special Operations breached the duty of care it owed them as third-party beneficiaries to the Contract by “failing to warn and instruct [the correctional] staff about the risk[s] of serious injury arising from close range shooting of persons with the [FN-303].” According to the Plaintiffs, Special Operations negligently performed its training duties, causing the correctional staff at the Worcester Jail to use the FN-303 devices in an inappropriate and dangerous manner. At this stage, the Plaintiffs have alleged sufficient facts to support their allegation that Special Operations breached its duty of care.
3. Causation
A plaintiff may prove that a defendant is the proximate cause of an injury “[if] the injury to the plaintiff was a foreseeable result of the defendant’s negligent conduct.” Delaney, 63 Mass.App.Ct. at 242, quoting Kent v. Commonwealth, 437 Mass. 312, 320 (2002). The question of causation is usually a question of fact for the jury. Christopher v. Father’s Huddle Caf, Inc., 57 Mass.App.Ct. 217, 226 (2003) (internal citations omitted). Here, the Plaintiffs allege that Special Operations’ failure to provide proper training and instruction on the use of the FN-303 devices “proximately caused” their injuries. This is sufficient at the motion to dismiss stage.
4. Damages
In a negligence case, proof of actual damages is an essential element of a plaintiffs case. If damage did not result from the breach of duly, there can be no recovery. See Donovan v. Philip Morris USA, Inc., 455 Mass. 215, 221-22 (2009) (“ ‘[ajctual loss or damage resulting to the interests of another’ is required”), quoting Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 742 (1978). The Plaintiffs allege that Special Operations’ failure to properly train the correctional staff caused them physical and emotional injury. This is sufficient to establish harm at the motion to dismiss stage.
The Plaintiffs have pled sufficient facts to support a claim against Special Operations for negligent training.
ORDER
For the reasons explained above, it is hereby ORDERED that:
1. Special Operations’ Motion to Dismiss be DE-NIED5 and
2. FNH’s Cross Motion to Prohibit Class Certification be DENIED.

FNH has also filed an opposition to Special Operations’ Motion to Dismiss.

Here, the court sets forth only general background information. More specific facts relevant to the motions before the court will be addressed in the discussion.

The “FN-303" is a semi-automatic less-lethal launcher designed for use by law enforcement and military services in situations where use of lethal weapons is not appropriate. The FN-303 utilizes compressed air to launch .68 caliber fin-stabilized projectiles weighing 8.5 grams from a fifteen-round drum-shaped magazine. The projectile is constructed of a friable clear plastic shell which is designed to shatter upon impact. The forward half of the projectile contains a non-toxic *470 granulated bismuth which gives the projectiles their weight. The rear half of the projectile contains one of several color-coded liquids depending upon the purpose for which the FN-303 is being used.

This conclusion does not mean the issue of class certification cannot be revisited. If, after discovery, new evidence comes to light that indicates one or more of Rule 23’s requirements have not been met, any of the defendants may, at that time, seek modification of the court’s class certification decision. See, e.g., Aspinall 442 Mass. at 398 n.22, quoting School Comm. of Brockton, 423 Mass. at 14 n.12 (stating courts should take a flexible approach to class certification allowing modification where necessary).

FNH claims the Plaintiffs have not identified the number of individuals who fit within the scope of the class definition and that, because this number is likely to be small, the Plaintiffs cannot meet the numerosity requirement. The court disagrees. There is no requirement that the Plaintiffs identify every potential class member. Furthermore, numbers alone do not control this analysis. The court is satisfied that, at this juncture, the Plaintiffs have demonstrated joinder of all potential class members is “impractical, unwise!,) [and] imprudent." Brophy, 6 Mass.App.Ct. at 735.

Pursuant to Mass.R.Civ.P. 8(a), a plaintiff is not required to state the specific legal theory on which his claim for recovery is based. Windross v. Village Auto. Group, Inc., 71 Mass.App.Ct. 861, 866 (2008). A complaint is sufficient so long as it gives fair notice of a party’s claims and contains “a short and plain statement that the pleader is entitled to relief.” Whitisville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979), citing Mass. R. Civ. P. 8 (a).

The court notes that “the failure to perform a contractual obligation is not a tort in the absence of some duty to act apart from the promise that has been made.” Anderson, 424 Mass. at 368, citing Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 144 (1937); see also Redgrave v. Boston Symphony Orchestra, Inc., 557 F.Sup. 230, 238 (D.Mass. 1983) (“a breach of contract is not, standing alone, a tort as well”). The law, however, distinguishes between the failure to perform under a contract and negligent performance of a contract. See id. at 368 (“Although the duly arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage is a tort,” quoting Abrams, 298 Mass. at 144). Claims for tort damages cannot be asserted in the former instance, but may be asserted in the latter. Here, the Plaintiffs do not merely allege that Special Operations failed to perform under the Contract; rather, they allege that Special Operations negligently performed its contractual obligations.